# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL WAKEFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>RICHARD INDERMILL,<br><br>    Defendant.<br>_____ / | CASE NO. 1:09-cv-00274-LJO-BAM PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 50, 61, 62)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.     Background**

Plaintiff Darryl Wakefield ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1 (Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)), filed this action on February 12, 2009. This action is proceeding on the first amended complaint, filed August 11, 2009, against Defendant Indermill for violation of the Free Exercise Clause of the First Amendment and RLUIPA. Defendant filed a motion for summary judgment on June 22, 2011. (ECF No. 50.) Plaintiff filed his opposition[1] on October 26, 2011, and Defendant filed a reply[2] on November 2, 2011. (ECF Nos. 61, 62.)

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on March 12, 2010. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

[2] In his reply, Defendant Indermill argues that Plaintiff's opposition fails to comply with the Local Rules and therefore summary judgment should be granted. The Court is to construe the pleadings of pro se inmates liberally and Plaintiff's opposition will be considered.

II. **Motion for Summary Judgment Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010.) The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010)

III. **Undisputed Facts**

1. Defendant Indermill has been employed by the California Department of Corrections and Rehabilitation as a Protestant Chaplain at California State Prison, Corcoran (CSP-Corcoran)

since 2003.

2. Defendant Indermill is the only Protestant Chaplain at CSP-Corcoran. There are approximately 2,000 Protestant inmates at CSP-Corcoran. Defendant Indermill estimates that less than two percent of the Protestant inmates are Seventh-day Adventists. The Seventh-day Adventist Church is considered a branch of Protestant Christianity.

3. Plaintiff is, and was, a Seventh-day Adventist and an inmate at CSP-Corcoran.

4. Plaintiff has been a Seventh-day Adventist since at least 1998.

5. Plaintiff has been in prison since 1994, and has been at CSP-Corcoran since September 2003.

6. Plaintiff's former probation officer described him as a very dangerous person with serious mental health problems.

7. According to a 1994 pre-sentence report, Plaintiff was diagnosed as schizophrenic when he was nine years old.[3]

8. Prison records indicate that Plaintiff is often non-compliant with his psychiatric medication regime.[4]

9. In 1999, Plaintiff was sentenced to an additional nine years in prison for battery on a correctional officer, resisting an executive officer, and possession of a weapon.

10. Plaintiff has been consistently housed in the Security Housing Unit (SHU) at CSP-Corcoran due to a litany of serious disciplinary violations.

11. The SHU is maximum-security facility which houses some of California's most dangerous prisoners.

12. The SHU is designed for inmates whose conduct endangers the safety of staff and other prisoners.

13. Plaintiff's disciplinary violations include numerous Rules Violation Reports (RVR's) for

---

[3] Plaintiff disputes that he was diagnosed with schizophrenia, however the fact as presented is that a pre-sentence report states that he was diagnosed as schizophrenic. Defendant has provided a copy of the report which states that Plaintiff has a mental illness and was diagnosed as schizophrenic at age nine. (Declaration of Kimbrell 8-9, ECF No. 51.)

[4] Plaintiff denies that he is required to take any medication. According to documents provided by Defendant Plaintiff is prescribed psychotropic medication and is not medication compliant. (Id. at 12, 13, 14.)

3

assaults on prison staff and other inmates.

14. In July 2008, Plaintiff threatened to kill a cellmate.

15. On November 1, 2009, Plaintiff threatened to kill a nurse.

16. Plaintiff has also received RVR's for mutual combat, disrespect to staff, threats to staff, manipulation, and destruction of state property.

17. Plaintiff has violently broken several prison windows as well as his personal television.[5]

18. According to prison records, Plaintiff has a history of manipulating and harassing staff to get what he wants.

19. Plaintiff claims that he sent inmate request for interview forms to Defendant Indermill on September 3, 2008, September 28, 2008, and November 23, 2008, in an attempt to get weekly Holy Communion and foot washing, and that he filed an appeal on December 1, 2008, but Defendant Indermill did not respond.

20. Defendant Indermill is unaware of the September and November 2008 requests.

21. Defendant Indermill responded to the December 1, 2008 appeal by visiting Plaintiff when he was in the hospital (not in the SHU) and providing him with Holy Communion and foot washing.

22. Plaintiff contends that, in Seventh-day Adventist (SDA) churches, Holy Communion and foot washing are performed four times per year.

23. Plaintiff also provided information from an unauthenticated church manual, which states that in the Seventh-day Adventist Church, "the communion service customarily is celebrated once per quarter . . . [and] includes the ordinance of footwashing."

24. Communion and foot washing are essentially symbolic gestures, and do not need to be performed weekly, nor do they need to be performed by a minister or chaplain. Allowances are made for prisoners, and neither Holy Communion nor foot washing is required to be in good standing as a Seventh-day Adventist.

---

[5]Plaintiff denies that there is any record that he violently broke any windows or that he broke his television. Defendant has submitted documentation that Plaintiff was charged with destruction of state property. (Id. at 27, 31, 32, 34, 37.)

4

25. Other inmates who choose to practice weekly communion do it in their cells using bread and grape drink. Plaintiff can also practice weekly communion and foot washing in his cell.

26. Additionally, Plaintiff can practice the Seventh-day Adventist religion by studying the Bible, praying, meditating, reading religious literature and devotional guides, talking with staff and other inmates, watching religious television programs, and corresponding with outside religious contacts.

27. Attempting to arrange for weekly Holy Communion and foot washing by a chaplain for an inmate in the SHU would be impracticable and would create extremely serious security and logistical concerns.

28. Visiting and volunteer ministers and chaplains are not allowed in the SHU.

29. For security reasons, a CDCR chaplain could not perform Holy Communion and foot washing in Plaintiff's cell, so Plaintiff would have to be transported to another location, which would require special authorization and extra security measures.

30. When SHU inmates are out of their cell for any reason, including showers, they must be escorted in restraints by two officers.

31. In each SHU building, there are three floor officers who are responsible for up to 128 inmates. The floor officers are responsible for cell feed, escorting nurses during medication delivery, and escorting each inmate to medical appointments, dental appointments, law library, showers, Institutional Classification Committee (ICC) meetings, and disciplinary hearings. They also hand out canteen, laundry, and supplies.

32. If Plaintiff were transported to a SHU holding cell, which consists only of bars, he might be able to stick his feet through the bars far enough to be soaked. If not, with approval, a bucket of water could be put in the cell first, Plaintiff could soak his feet, then the chaplain could wash and dry his feet through the bars. Due to Plaintiff's history of "gassing," or throwing toilet water and other substances on staff members, it is unlikely that Plaintiff would, or should, be permitted to have a bucket of water in the cell with him.

33. Two officers would be required to escort Plaintiff at all times. This would leave only one

floor officer in charge of up to 127 inmates. Additionally, an officer from another unit would have to escort the chaplain to the SHU.

34. Allowing Plaintiff to have Holy Communion and foot washing every Thursday evening would have an adverse impact on the other inmates in the SHU, because required programs (i.e., showers and medical appointments) would have to stop while two of the three floor officers were occupied with Plaintiff's foot washing. This would create resentment among the other SHU inmates whose showers and other programs were delayed or cancelled due to Plaintiff.

35. Overtime pay for correctional officers would not be authorized for a foot washing ceremony. If it were, the rate of overtime pay for a basic correctional officer is roughly $50 per hour. Paying two additional correctional officers overtime for one hour every Thursday night would cost the state an estimated $100 per week, or $5,200 per year.

36. If weekly Holy Communion and foot washing by a chaplain were provided to Plaintiff each week, the same weekly service would have to be provided to any other inmate who requested it and claimed it was based on a sincere religious belief. This would greatly multiply the serious security and logistical issues listed above.

37. Plaintiff also sued Chaplain Indermill in Wakefield v. Tilton, 1:07-cv-01802-OWW-GSA, in 2007.

38. Prior to doing so, Plaintiff filed an inmate appeal contending that due to his mental health level of care, he should be able to shower daily.

39. Plaintiff was informed by prison staff that, because he was in the SHU, he was allowed to shower three times each week.

40. Plaintiff appealed to the next level, and changed his approach, claiming that his Seventh-day Adventist religious beliefs and practices mandated daily showers.

41. Defendant Indermill responded to Plaintiff's appeal, and advised Plaintiff that daily showers were not a requirement of the Seventh-day Adventist religion.

42. On November 25, 2009, Wakefield v. Tilton was dismissed for failure to state a claim.

6

43. Plaintiff has called Defendant Indermill a liar and accused him of perjury.

44. Plaintiff has also made false and libelous statements about Defendant Indermill, claiming that he was fired for criminal activities.

45. In 1998, Plaintiff sued Bliesner, the chaplain at Pelican Bay State Prison, alleging that his religious freedom rights were violated when he was not permitted to have a cassette player and religious music tapes. Bliesner's motion for summary judgment was granted.

## IV. Discussion

### A. Plaintiff's Claims

Plaintiff alleges that he had been attempting to receive communion and Defendant Indermill refused to provide communion for him. Although the complaint does not state a claim for refusal to provide foot washing, it appears that the parties, by their pleadings have agreed to an amendment of the complaint. Therefore, the motion for summary judgment shall address Plaintiff's allegation that Defendant Indermill failed to provide weekly communion and foot washing.

### B. Defendant's Motion for Summary Judgment

Defendant states that he is entitled to summary judgment because there is no evidence that, by failing to provide weekly communion and foot washing, Defendant Indermill interfered with Plaintiff's free exercise of religion under the First Amendment or RLUIPA, his conduct is not attributable to the state, and he is entitled to qualified immunity. The Court finds that Defendant has met the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

### C. First Amendment - Free Exercise

Defendant states that he is entitled to summary judgment because there is no evidence that, by failing to provide weekly communion and foot washing, Defendant Indermill interfered with Plaintiff's free exercise of religion under the First Amendment. Defendant argues that evaluation of the Turner factors show that there is a legitimate penological justification for not providing weekly

communion and foot washing for Plaintiff. There is no specific regulation or policy prohibiting inmates from receiving communion or foot washing while he is housed in the SHU.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987). Nevertheless, prisoners' constitutional rights are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987); Bell v. Wolfish, 441 U.S. 520, 546-47, 99 S. Ct. 1861, 1878 (1979). "Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone, 482 U.S. at 348, 107 S. Ct. at 2404 (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by* Shakur, 514 F.3d at 884-85. Prison regulations that are alleged to infringe upon an inmate's constitutional right to free exercise of religion are evaluated under a reasonableness test, Resnick v. Adams, 348 F.3d 763, 768 (9th Cir. 2003), and are valid if they are reasonably related to a legitimate penological interest, Turner, 482 U.S. at 89-90, 107 S. Ct. at 2262. With the exception for Eighth Amendment claims, Turner applies to all constitutional claims arising in prison. Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993).

Under Turner, the factors considered are "1) whether the regulation is rationally related to a legitimate and neutral governmental objective;" 2) if alternative means of exercising the right are available; 3) the impact that accommodation of the right will have on others at the facility and the allocation of resources; and 4) "whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials." Hrdlicka v. Reniff, 631 F.3d 1044, 1049 (9th Cir. 2011) (citations omitted).

Although Defendants argue that there is no specific regulation or policy prohibiting an inmate from receiving communion or foot washing in the SHU, Defendants also cite several regulations that

would require special permission to be obtained in order for the chaplain to provide Plaintiff with the requested services while he is housed in the SHU. Specifically, visiting chaplains or volunteers are not allowed in the SHU, so only a CDCR chaplain would be permitted to perform the requested services. Due to security concerns, communion and foot washing could not be performed in Plaintiff's cell and would require his transport to another location, such as a SHU holding cell, and to perform weekly communion and foot washing would require special authorization which indicates that a policy exists.

### 1. Turner Factors

#### a. Rationally Related to a Legitimate Penological Objective

Defendant argues that due to security concerns, Defendant Indermill could not perform weekly services for Plaintiff without special authorization and increased security measures, which would burden staff and other inmates. Limiting contact between non-custodial staff and SHU inmates, who are some of the most dangerous and violent inmates, is rationally related to the legitimate government interest of ensuring the safety of inmates and staff.

Plaintiff argues that foot washing and communion have been performed in his cell without any special authorization. Plaintiff states that he has been allowed to have water in his cell to soak his feet. Additionally, removing Plaintiff from his cell for medical appointments and haircuts does not stop inmate programing, so removing him for communion and foot washing would not impact the programing in the SHU. Plaintiff states that not receiving communion and foot washing is "eternal damnation in hellfire." Defendant Indermill is required by regulations to provide him with religious services.

The first factor requires the court to determine if the policy is legitimate and neutral and assess whether there is a rational relationship between the objective and the policy. Ashker v. California Dep't of Corrections, 350 F.3d 917, 922 (9th Cir. 2003). In determining if there is a rational relationship between the objective and the policy at issue, "the level of scrutiny applied to the judgment of prison officials depends on the circumstances of each case." Ashker, 350 F.3d 917, 922 (9th Cir. 2003). "If the inmate presents sufficient evidence to refute a common-sense connection

between a legitimate objective and a prison regulation the state must present enough counter-evidence to show that the connection is not so remote as to render the policy arbitrary or irrational." Id. (internal punctuation and citations omitted.) If the inmate fails to present sufficient evidence to refute the common-sense connection between the regulation and objective then the question is whether prison officials could reasonably believe the regulation would advance a legitimate penological interest. Id.

Plaintiff has not pointed to any evidence that the regulations are not rationally related to a legitimate governmental objective that is sufficient to allow him to prevail on the merits. The government has a compelling interest in maintaining security and discipline in the prison, consistent with considerations of cost and limited resources. Shakur, 514 F.3d at 889. Defendants contend that denying Plaintiff weekly foot washing and communion in his cell is related to legitimate security concerns regarding housing in the SHU. The inmates housed in the SHU are the most dangerous inmates in the prison system who have been determined to be a danger to the safety of others or the security of the institution. Cal. Code Regs., tit. 15 § 3341.5(c). Plaintiff has been confined to the SHU due to being determined to be a danger to other inmates and prison staff. (UF 13, 14, 15, 16.)

The policies that limit contact with non-custodial personnel and require custodial personnel to be present during contact do have a common sense connection with the objective to maintain security in the prison. Due to security concerns Plaintiff cannot have foot washing and communion performed in his cell. (UF 29.) In order to transport Plaintiff to a location where the requested services are performed two officers are required to transport Plaintiff. (UF 33.) Additionally, a third correctional officer is required to bring non-custodial personnel into the SHU. (UF 33.) While Plaintiff argues that he is transported by a single officer on occasion, Defendant has provided evidence that the policy requires that two officers escort a SHU inmate. (Declaration of Mary Kimbrell 2, ECF No. 62-2.) Plaintiff is confined to the SHU due to his violent history, which includes threats and assaults on custodial and non-custodial personnel, therefore it seems highly unlikely that the policies would not be followed when dealing with Plaintiff's requests. The policies are applied neutrally to all movement of inmates and non-custodial staff entering the SHU.

Accordingly, regulating contact between inmates confined in the SHU and non custodial prison personnel is reasonably related to the security concerns at the prison, the first factor weighs in favor of the prison.

Since inmates confined in the SHU create a security risk to individuals that they come into contact with, the Court finds that the policies are not arbitrary or irrational, but are reasonably related to the legitimate governmental interest of maintaining the security of the prison.

### b.   Alternative Means of Exercising the Right

Defendants argue that although Plaintiff did not receive weekly communion and foot washing by a chaplain, he was able to study the Bible, pray, meditate, read religious literature and devotional guides, talk with staff and other inmates, watch religious television programs, and correspond with outside religious contacts. Weekly communion and foot washing are not required practices of the Seventh-day Adventist Church, but are essentially symbolic gestures. Additionally, they do not need to be performed by a chaplain or minister, and Plaintiff had the ability to perform foot washing and communion in his cell, as other inmates do.

Plaintiff responds that there is no alternative way for him to practice his religion. While Defendants claim that he can study the Bible, pray, meditate, read religious literature and devotional guides, talk with staff and other inmates, watch religious television programs, and correspond with outside religious contacts, it means nothing if he is not receiving communion and foot washing. Only an ordained minister or church elder can conduct communion. The Bible teaches that communion is to be taken as often as possible.

The relevant inquiry is not whether alternative means is available to exercise the particular religious practice that is being infringed upon, but whether the inmate has been denied all means of religious expression. Shakur, 514 F.3d at 886; Ward, 1 F.3d at 877. It is undisputed that Plaintiff has numerous other means of practicing his religion. He can read the Bible or other religious literature, pray, meditate, watch religious television programs, speak with other inmates and staff, and correspond with outside religious contacts. (UF 26.) Additionally, Plaintiff is able to partake of communion and foot washing in his cell without the benefit of clergy. (UF 25.) It also appears

that Plaintiff is receiving the requested services as often as they are provided to those attending the Seventh-day Adventist Church. Although Plaintiff wants communion and foot washing to be provided weekly, the literature provided by Plaintiff shows that communion is celebrated once per quarter by the church. (Carroll Declaration, Exhibit E, ECF No. 50.4.). The second Turner factors weighs heavily in the favor of Defendant.

### c.    Impact on Staff, Other Inmates, and Prison Resources

Defendants argue that granting Plaintiff's request for weekly communion and foot washing by a chaplain would place an inordinate undue burden on correctional officers and other inmates.

Plaintiff replies that security concerns are not relevant to his situation because Defendant Indermill has come on three occasions and provided Plaintiff with foot washing and communion in the SHU. There are four floor officers in each building, not three and it only took one floor officer to stand by while Defendant Indermill provided services.

Defendant Indermill responds that he has only provided Plaintiff with foot washing on one occasion, which was while Plaintiff was in the hospital. In order to enter the SHU, Defendant Indermill states he is always escorted by custody officers. The prison has recently implemented new policies and Plaintiff was provided with communion and foot washing by a volunteer. Plaintiff was escorted to the rotunda and three custody officers were required to supervise.

According to Defendant Indermill there are only three floor officers for the 128 inmates housed in the SHU. (UF 31.) All SHU inmates are restricted to their cells and out of cell movement requires two officers to escort the inmate in restraints. (UF 30.) For security reasons, Plaintiff can not receive communion and foot washing in his cell so he would have to be transported to another location and two officers would be required to restrain, transport, and escort him to the location. (UF 29, 33.) The officers would then be required to wait while the ceremony took place and return Plaintiff back to his cell. (UF 34.) This would only leave one floor officer in the SHU and all other inmates would be unable to leave their cells until Plaintiff was returned to his cell. (UF 33, 34.) This would cause resentment among other inmates whose showers and programs were delayed or cancelled due to Plaintiff. (UF 34.)

While Plaintiff alleges that there are four floor officers, it appears that one of the officers is not a floor officer, but is a search and escort officer, who is assigned to searches, escorts, and other duties as assigned by the sergeant. (Declaration of Mary Kimbrell 2, ECF No. 62-2.) Plaintiff also argues that only one officer would be needed to transport him for communion. However, Plaintiff has a history of threatening non-custodial personnel who are attempting to provide services to him. Additionally, Plaintiff has exhibited animosity toward Defendant Indermill. (UF 43, 44.) Given Plaintiff's violent history and mental health issues it would appear that the policy requiring two officers to accompany Plaintiff would be followed if Defendant Indermill were to administer communion and foot washing to Plaintiff.

Providing Plaintiff with the services that he is requesting would require that three correctional officers be unavailable for a period of time. Two of these officers would be the floor SHU officers and this would require that other SHU inmates would be unable to be removed from their cells while Plaintiff is being provided with foot washing and communion. All activity on the SHU would be halted for approximately one hour. This would significantly impact the inmates and staff in the SHU and create unrest in the SHU. Avoiding a perception of favoritism is a legitimate penological goal since it may cause resentment, envy and intimidation. Standing Deer v. Carlson, 831 F.2d 1525, 1529 (9th Cir. 1987). The Court may consider the impact upon prison morale as it is not irrelevant, but it is also not dispositive. Ward, 1 F.3d at 878.

Construing the facts in the light most favorable to Plaintiff the impact on staff, inmates, and prison resources weighs slightly in favor of Defendant.

### d.      Existence of Obvious, Easy Alternatives

Defendants argue that Plaintiff has been free to engage in any religious alternatives to weekly communion and foot washing by a religious leader. Plaintiff can practice communion and foot washing in his cell without a chaplain. Plaintiff can and does practice other facets of his religion. Defendant argues that because the Turner factors weigh in Defendant Indermill's favor, his motion for summary judgment should be granted.

Plaintiff responds that there are no alternatives to communion and foot washing.

The fourth factor requires considering if there are ready alternatives to the current policy that would accommodate Plaintiff at de minimus cost to the prison. Ward, 1 F.3d at 879. Evidence of a ready alternatives is evidence of the reasonableness of the regulation and that it is not an exaggerated response to prison concerns. Id. An alternative would be for officers to be paid overtime to stay and accompany Plaintiff for foot washing and communion. However this would require overtime pay at a rate of approximately $50 per hour for each officer. Paying two correctional officers overtime for one hour per week would cost an estimated $5,200 per year. (UF 35.) Defendants state that due to state budgetary concerns this would not be authorized for a foot washing ceremony. Additionally, providing such services to Plaintiff could inspire other inmates to make similar requests and therefore the full extent of the cost is unknown. (UF 36.)

Defendant also argues another obvious and easy alternative is directly within Plaintiff's control. Plaintiff can stop violating prison rules so he will be released from the SHU into the general population which is a much less restrictive environment.

The fourth factor also weighs slightly in favor of Defendant. The policy is not an exaggerated response to prison concerns, but is reasonable in light of the security concerns at issue in the SHU.

Since the Turner factors all weigh in favor of Defendant, the Court finds that the policy is valid as it is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89-90, 107 S. Ct. at 2262. Plaintiff has failed to establish a genuine issue of material fact sufficient to allow him to prevail on the merits of his First Amendment claim. Accordingly the Court recommends that Defendant's motion for summary judgment be granted on Plaintiff's First Amendment claim.

### D.    **RLUIPA**

Defendant states that he is entitled to summary judgment because there is no evidence that, by failing to provide weekly communion and foot washing, Defendant Indermill interfered with Plaintiff's rights under RLUIPA. Defendant Indermill's alleged refusal to provide weekly communion and foot washing did not place a substantial burden on Plaintiff's right to practice his religion.

Initially, the Court finds that Defendant Indermill has not placed a substantial burden upon Plaintiff's right to practice his religion. The facts show that Plaintiff was not restricted from practicing his religion in any manner, other than his desire to have a chaplain provide weekly communion and foot washing. (UF 26.) Plaintiff was able to perform foot washing and communion in his cell on a weekly basis if he desired. (UF 25.) Seventh-day Adventists who are not incarcerated practice communion and foot washing quarterly. (UF 22, 23.) Plaintiff has failed to show that a substantial burden was placed upon his religious practice.

Additionally, pursuant to 42 U.S.C. § 2000cc-2(a) an individual may assert a claim under RLUIPA "and obtain appropriate relief against a government." The Eleventh Amendment bars a suit for damages under RLUIPA against government officials in their official capacity. Sossamon v. Texas, __ U.S. __, 131 S. Ct. 1651, 1655 (2011); Holley v. California Dep't of Corrections, 599 F.3d 1108, 1114 (9th Cir. 2010). The Ninth Circuit has not ruled on whether RLUIPA provides an action for damages against prison officials in individual capacity suits. Florer, 639 F.3d at 922 n.3. However the Fifth, Seventh, and Eleventh Circuits have concluded that Congress enacted RLUIPA pursuant to the Spending Clause and did not indicate with sufficient clarity an intent to create an individual capacity action for damages, moreover, such a reading of the statute would raise serious constitutional concerns regarding the extent of Congress' authority under the Spending Clause. See Sossamon v. Lone Star State of Texas, 560 F.3d 316, 329 (5th Cir. 2009) (Congressional enactments pursuant to the spending clause do not impose direct liability on an individual who is not a party to the contract between the state and federal government); Nelson v. Miller, 570 F.3d 868, 889 (7th Cir. 2009) ("Construing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause"); Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007) ("[S]ection 3 of RLUIPA-a provision that derives from Congress' Spending Power-cannot be construed as creating a private action against individual defendants for monetary damages"), abrogated on other grounds, Sossamon, __ U.S. ___, 131 S. Ct. 1651. The Fourth Circuit has also held that no individual capacity claim can be brought under RLUIPA. Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir.

2009) ("[I]t would be a novel use of the spending clause to condition the receipt of federal funds on the creation of an individual capacity damages action").

The Ninth Circuit has found that RLUIPA is constitutional as an enactment under the Spending Clause. Mayweathers v. Newland, 314 F.3d 1062, 1066 (9th Cir. 2002). Implicit in the Ninth Circuit's holding is recognition of limits on Congress' authority under the Spending Clause. Thus, the Court finds the reasoning of the Fourth, Fifth, Seventh, and Eleventh Circuits persuasive and concludes that RLUIPA does not create a suit for damages against defendants in their individual capacities. See also Williams v. Book, No.2:10-cv-0423, 2011 WL 2173743, *2 n.2 (E.D. Cal. June 2, 2011); Rupe v. Cate, 688 F.Supp.2d 1035, 1045 (E.D. Cal. Feb. 1, 2010); Hypolite v. CDCR, No. 2:05-cv-0428, 2010 WL 1729736, *5 (E.D. Cal. Apr. 28, 2010). Accordingly, Plaintiff may not recover damages against defendant in his individual capacity under RLUIPA. Since Defendant Indermill cannot be sued in his individual capacity under RLUIPA, Defendant's motion for summary judgment should be granted. Lino v. Small, 2011 WL 4352844, No. 09-cv-01834-MMA (PCL), *1 (S.D. Cal. Sept. 19, 2011).

### E.     Remaining Claims

Defendant states that he is entitled to summary judgment because there is no evidence Defendant Indermill's conduct is attributable to the state. As a prison chaplain Defendant Indermill is not a state actor when he engages in inherently ecclesiastical functions. Defendant argues that since providing foot washing and communion are inherently ecclesiastical functions he was not a state actor in allegedly denying Plaintiff religious services. The Ninth Circuit has not decided whether a prison chaplain acts under color of state law. Evans v. Moskowitz, 2009 WL 2578919, No. CV 07-7090 DDP (SS), *4 (C.D. Cal. Aug. 18, 2009). Since the recommendation is that summary judgment be granted based upon the foregoing discussion, the Court finds it unnecessary to address the issue of state action.

Defendant's final arguments are that he is entitled to qualified immunity and Plaintiff is not entitled to punitive damages. Because the Court recommends granting Defendant's motion based on the foregoing analysis, the Court does not reach Defendant's remaining arguments.

**V.     Conclusion and Recommendation**

The Court finds that Defendant Indermill is entitled to judgment as a matter of law on Plaintiff's First Amendment and RLUIPA claims. Accordingly, it is HEREBY RECOMMENDED that Defendant Indermill's motion for summary judgment, filed June 22, 2011, be GRANTED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 21, 2011**                    **/s/ Barbara A. McAuliffe**
                                                                           UNITED STATES MAGISTRATE JUDGE